# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH
# CIVIL ACTION NO. 5:13-CV-00176-LLK

**SHERRY RENEE GREEN**                                                                                       **Plaintiff**

**v.**

**CAROLYN W. COLVIN**                                                                                        **Defendant**
    **Acting Commissioner of Social Security**

## MEMORANDUM OPINION AND ORDER

Sherry Green filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of an administrative decision of the Commissioner of Social Security, who denied her application for disability benefits. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals.

Plaintiff seeks review of a decision issued by administrative law judge (ALJ) Marci P. Eaton. The Court agrees with Plaintiff that the ALJ's finding that she can perform medium work, in light of the objective radiographic evidence in the administrative record, is unsupported by substantial medical evidence. Therefore, the Court will REMAND this matter to the Commissioner for a new decision and further administrative proceedings.

### Background Facts and Sequential Evaluation Process

Disability determination is a five-step sequential process. If an ultimate finding of "disabled" or "not disabled" is required at any step, it is legally unnecessary to advance the evaluation to the next step. However, as occurred in this case, where a finding of "not disabled" is required, ALJs sometimes proceed to subsequent steps, which also result in a finding of "not disabled," for the purpose of showing an alternative legal basis for the denial decision.

*STEP # 1* The claimant must not be engaged in substantial gainful activity (SGA). Plaintiff was not engaged in SGA at the time she alleges disability. She last engaged in work-like activity at Minute

1

Mart.[1] She was discharged and, thereafter, received unemployment benefits pursuant to Kentucky Revised Statutes (KRS) 341.350.

*STEP # 2* The alleged disabling impairment must be "severe." Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is severe, and the sequential evaluation proceeds to Step # 3. The ALJ acknowledged that Plaintiff suffers from severe, or vocationally-significant, spine disorder, Hepatitis C, affective disorder, somatoform disorder, and history of polysubstance abuse. Administrative Record (AR), p. 17.

*STEP # 3* If the claimant has a medical condition that satisfies the medical criteria of any impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations (the "Listing"), a conclusive presumption attaches that the claimant is disabled. Plaintiff does not allege that any of her impairments are of Listing-level severity.

*STEP # 4* The claimant must not be able to perform past relevant work (PRW) either as actually performed or as generally performed in the national economy.

The Commissioner determines a claimant's residual functional capacity (RFC) at Step 4. The ALJ found that Plaintiff has an RFC for a limited range of medium work. AR, p. 18. Among Plaintiff's PRW was working as a hand packager at a cookie factory. The vocational expert (VE) described this job as medium as generally performed in the national economy but indicated that it was light as actually performed by Plaintiff.[2]

---

[1] While the work at Minute Mart was substantial, it was insufficiently gainful to rise to the level of SGA. Plaintiff had to pay the Methadone Clinic $368.05 per month, which counted against earnings, for treatment that allowed her to work.

[2] Upon questioning by the VE, Plaintiff clarified that she did not engage in any significant lifting such as lifting a mixing machine or any other type of machinery – just picking up cookies. AR, p. 351. The VE testified that the work was "normally medium in exertion [Dictionary of Occupational Titles (DOT) Code No. 920.587-018] [but] it certainly does exist at light. There is just not a good light classification for it." AR, p. 352.

The ALJ found that Plaintiff is able to perform her PRW as hand packager as actually and generally performed in the national economy. AR, p. 27. This finding terminated the sequential evaluation process and required an ultimate finding of "not disabled."

*STEP # 5* The claimant must be unable to perform any job that exists in significant numbers in the national economy. The ALJ found, "in the alternative," that "[a]lthough the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform." AR, p. 27.

The claimant retains the burden of proof at steps one through four. At Step 5, the burden of going forward with evidence of non-disability shifts to the Commissioner. The ALJ accepted the VE's testimony that, in addition to Plaintiff's past relevant work as hand packager, an individual with Plaintiff's limitations would retain the ability to perform other medium jobs in the national economy, including laundry worker (DOT 361.687-018) and product laborer (DOT 921.686-014). AR, pp. 27-28.

The ALJ found Plaintiff to be "not disabled" at the fourth and, alternatively, at the fifth and final steps of the sequential evaluation process.

**The ALJ erred in relying on Dr. Hernandez' opinion**
**In support of her RFC finding for medium work.**

As reflected in the above discussion, the ALJ's alternative denial rationale required a finding that Plaintiff retains the ability to perform a limited range of medium work. The ALJ's finding that Plaintiff can perform medium work was based, in part, upon "accept[ance] [of] the opinion of the State Agency program physician," Carlos X. Hernandez. AR, p. 24.

In recent years, the State Agency has implemented a new system in which disability determinations are made at the initial level are made by a so-called "single-decisionmaker" (SDM). The SDM is neither a medical nor a vocational expert. Nevertheless, the SDM reviews the medical evidence, makes medical and vocational findings, and applies those findings to governing legal standards to arrive at an ultimate finding of "disabled" or "not disabled."

If the claimant requests reconsideration, the State Agency will typically obtain a medical opinion from a State Agency program physician and/or psychologist. These individuals are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i).

The problem in this case is not Dr. Hernandez' qualification to independently evaluate medical evidence and arrive at an RFC assessment but rather a lack of evidence in the administrative record as to what, if any, medical evidence he was provided by the State Agency and, therefore, the extent to which he was in a position to independently evaluate the evidence.

In this case, SDM Erin Wheeler evaluated the medical evidence of record, including a cervical spine x-ray from December, 2009, and a cervical spine MRI from January, 2010. AR, pp. 193-194. The radiographic interpretation of these studies revealed significant findings, including degenerative disc disease (DDD) at the C4 through C7 levels, broad-based disc bulging, foraminal encrouchment, spurring, canal narrowing at multiple levels, etc. The SDM summarized these findings as showing only: "Multiple canal and foraminal stenosis. No fracture. ... DDD at C4-5, C5-6 and C6-C7." AR, p. 39.[3] The SDM completed the physical RFC form consistently with an ability to perform medium work.

Upon reconsideration, the State Agency requested Dr. Hernandez' opinion with the following instructions: "This is a recon claim on a 55 year old .... A medium RFC has been completed. Please sign RFC ... if you agree. Thanks!" AR, p. 285. Dr. Hernandez signed the form.

The only medical information on the pre-completed form is an identified primary diagnosis of "DDD Cervical Spine." AR, p. 277. The only additional information on the form (besides the pre-completed "X" marks corresponding to an ability to perform medium work) is the following (AR, p. 278):

---

[3] Subsequent to the assessment of the SDM and Dr. Hernandez, a diagnostic consultation by Keith Crawford, M.D., revealed additional significant findings, including "extensive Grade III hypertrophic cervical spondylosis involving C4-C5, C5-C6, C6-C7 with mild bilateral neuroforaminal encroachment. ... Grade I thoracic spondylosis. Grade II facet osteoarthropathy with Grade I degenerative spondylolisthesis, L4 with respect to L5." AR, pp. 325-326.

> *Question:* Explain how and why the evidence supports your conclusions .... Cite the specific facts upon which your conclusions are based.
>
> *Pre-completed Response:* The initial RFC is affirmed. New information has been received and considered but does not significantly alter the previous assessment.

Dr. Hernandez signed the RFC form.

There is no indication whether Dr. Hernandez was provided with: 1) the "new information" referenced on the form he signed, 2) the actual cervical spine x-ray and MRI reports, or 3) only the SDM's abbreviated summary of those reports. The record does not contradict the possibility that Dr. Hernandez simply signed off on the form provided by the State Agency based upon a diagnosis of "DDD Cervical Spine." There is a huge gap of medical information between this raw diagnosis and the actual clinical findings in the radiographic reports. While a generic individual with "DDD Cervical Spine" may be able to perform medium work, it does not follow that Plaintiff can.

The Eastern District of Kentucky (Senior District Judge Joseph M. Hood) was recently confronted with a similar situation, which also involved an SDM and program physician Dr. Hernandez. *Conn v. Colvin*, No. 0:13-CV-00138-JMH, 2014 WL 1613930 (E.D.Ky. April 23, 2014).[4]

Judge Hood agreed with Plaintiff that "the ALJ erred by relying on the report provided by Dr. Carlos X. Hernandez because Dr. Hernandez adopted an RFC that was completed by a single-decision maker without adequate explanation for the included limitations." Because Dr. Hernandez left his explanation blank, the ALJ was unable to determine the appropriate weight to give to Dr. Hernandez' opinion under the rules for weighing nonexamining source medical opinions. Those rules provide, in part, that "the weight we will give [nonexamining source] opinions will depend on the degree to which they provide supporting explanations for their opinions [and] consider all of the pertinent evidence in your claim." 20 C.F.R. § 404.1527(c)(3). However, Judge Hood found the error to be harmless because

---

[4] The situation is also reminiscent of the Sixth Circuit's passing observation in *Johnson v. Commissioner*, 652 F.3d 646, 650 (6th Cir.2011) that it simply could not "help but note that that the administrative record reflects that [the State Agency program physician] did not reach this conclusion independently; he was provided with a completed residual functional capacity [form] and asked to sign it 'if [you] agree with assessment.'"

the ALJ did not solely rely on Dr. Hernandez' opinion in assessing the claimant's RFC but relied on other substantial evidence.

This Court reaches the same conclusion that the ALJ erred in relying on Dr. Hernandez' opinion in this case. In addition, as in *Conn*, the Court wishes to clarify that: "[I]t is not holding that a consulting examiner cannot agree with the findings of an SDM. It is possible that two individuals may examine the same medical evidence and come to the same conclusion. Rather, the Court is holding that an ALJ may not rely on the findings of a consulting examiner who wholly fails to explain his findings. Without an explanation for the examiner's conclusion, the ALJ cannot make a reasoned decision as to the weight to give to the consulting medical examiner's opinion."

The ALJ erred in relying on Dr. Hernandez' opinion in support of her RFC finding for medium work.

**The error was not harmless.**

As in *Conn*, the ALJ's RFC for medium work was not based solely upon Dr. Hernandez'opinion. However, unlike *Conn*, the error was not harmless as the other evidence cited by the ALJ in support of her RFC was insubstantial.

In June, 2011, Plaintiff was examined, at the request of the State Agency, by Jonathan R. Van Meter, M.D. In his narrative report, Dr. Van Meter opined restrictions that are inconsistent with the 25-pound lifting, 6-hour standing requirements of medium work and arguably inconsistent with the 6-hour sitting requirement of even sedentary work[5] (AR, p. 211):

> In my opinion, this patient can sit comfortably for 15 to 20 minutes. She can stand for 5 minutes before she has trouble. She can probably walk 5 minutes. She can lift and carry objects less than 5 pounds short distances. ... She states that she has some numbness in her hands, which limits her ability to use her hands .... In my opinion, this patient would

---

[5] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday. Social Security Ruling (SSR) 83-10. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. A full range of sedentary work requires sitting for approximately 6 hours in an 8-hour workday. *Id.*

benefit from the use of a cane over all terrain given the fact that she complained of a lot of pain in her legs and also complained of back problems and foot. She states she needs a cane over all terrain.[6]

In August, 2011, the SDM gave Dr. Van Meter's opinion little weight and found that Plaintiff can perform medium work. AR, p. 40.

In November, 2012, the ALJ concurred with the SDM and Dr. Hernandez that Plaintiff can perform medium work and gave Dr. Van Meter's contrary opinion "little weight"[7] because (AR, pp. 17 and 24):

1. Dr. Van Meter's objective medical findings during his examination were "within normal limits, which is consistent with other physical and neurological examinations."

2. Dr. Van Meter's opinion is "only consistent with the subjective complaints of the claimant."

3. Dr. Hernandez opined that Plaintiff can perform medium work.

4. Plaintiff provided no treating source medical opinion regarding her physical restrictions.

5. Plaintiff's daily activities reflect that she can participate in more activities than she alleged to Dr. Van Meter.

6. Plaintiff testified that she has been receiving unemployment benefits since June or July 2012 and has applied for work at the Five Star Food Mart and at other small businesses close to her home after her alleged onset of disability date.

7. Plaintiff's certification of ability to work as required by Kentucky Revised Statutes (KRS) 341.350 to receive unemployment benefits, while simultaneously alleging inability to work in connection with her disability claim, negatively impacts on her credibility.

The foregoing reasons for discounting Dr. Van Meter's opinion and finding that Plaintiff can perform medium work were insubstantial because:

---

[6] These limitations that Plaintiff reported to Dr. Van Meter are consistent with her testimony at the administrative hearing beginning at AR, p. 337.
[7] "Generally, we give more weight to the opinion of a source who has examined you [i.e., Dr. Van Meter] than to the opinion of a source who has not examined you [Dr. Hernandez]." 20 C.F.R. § 404.1527(c)(1).

1. The ALJ's finding that the physical and neurological examination results support an RFC "within normal limits," i.e., an RFC for medium work, is belied by the radiological evidence, which no medical source took into account in opining an RFC.

2. In light of the radiological evidence, it is not the case that Dr. Van Meter's opinion, which acknowledged some significant limitations, is "only" consistent with the subjective complaints of the claimant.

3. The ALJ's reliance on Dr. Hernandez' opinion was insubstantial for the reasons discussed in the previous section of this report.

4. The lack of a treating source medical opinion did not relieve the ALJ of her responsibility of considering the evidence as a whole, including the radiographic evidence, in determining Plaintiff's RFC.

5. While Plaintiff's daily activities may reflect that she can participate in more activities than she alleged to Dr. Van Meter, they do not prove that she can perform medium work.

6 and 7. While the Sixth Circuit has recognized that "[a]pplications for unemployment and disability benefits are inherently inconsistent," *Workman v. Commissioner*, 2004 WL 1745782, a finding that Plaintiff is capable of some work does not prove that she can perform medium work.

The ALJ's erroneous reliance upon Dr. Hernandez' RFC for medium work was not harmless because – disregarding Dr. Hernandez' RFC – there was no substantial evidence supporting the ALJ's finding that Plaintiff can perform her past relevant work, which was medium, and a substantial number of other medium jobs in the national economy.

**The evidence does not support a judicial award of benefits.**

The remaining question is whether the Court should accept Dr. Van Meter's findings and judicially award benefits.[8]

---

[8] The rationale for an award of benefits would be two-fold: First, Dr. Van Meter's finding that Plaintiff can "sit comfortably for [only] 15 to 20 minutes" (AR, p. 211) suggests that she cannot sit for 6 out of 8 hours per workday as required by even sedentary work. Second, if Plaintiff cannot perform her medium past relevant work, the

"A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and the evidence to the contrary is lacking." *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir.1994).

Like Dr. Hernandez, there is no evidence that Dr. Van Meter was aware of the radiographic evidence at the time he gave his opinion. On the contrary, it appears that Dr. Van Meter's assessment was based entirely upon the results of his own first-hand observations and examination and a somewhat uncritical acceptance of Plaintiff's self-description of her pain and other subjective symptoms.

Because there is no evidence that Dr. Van Meter's opinion took into account the radiographic evidence and other objective medical evidence and because this Court is unqualified to interpret such evidence in functional terms, the Court is uncomfortable giving Dr. Van Meter's opinion case-dispositive weight on its own initiative.

A judicial award of benefits is inappropriate because evidence of non-disability is not completely "lacking" as contemplated by *Faucher*, supra.

**Order**

For the foregoing reasons, this matter is REMANDED to the Commissioner for a new decision and further administrative proceedings not inconsistent with this opinion.

---

sequential evaluation advances to the fifth and final step. In connection with her alternative fifth-step findings, the ALJ cited Grid Rules 203.15 and 203.22 as a framework for decisionmaking. AR, p. 28. The corresponding Grid Rules for light and sedentary work (202.06, 201.06, and 201.14) dictate in an ultimate finding of "disabled."